Tuesday                15th

January, 2002.


Shannon P. Skelly and Sarah E. Skelly,
 as Beneficiaries of Michael L. Skelly, Deceased,          Appellants,

 against       Record No. 2358-00-2
               Claim No. 182-60-40

Hertz Equipment Rental Corporation and
 Reliance National Indemnity Company,                      Appellees.


Upon a Rehearing En Banc

Before Chief Judge Fitzpatrick, Judges Benton, Willis, Elder,
Bray, Annunziata, Bumgardner, Frank, Humphreys, Clements and
Agee

Louis D. Snesil (Louis D. Snesil,
P.C., on brief), for appellants.

R. Ferrell Newman (Thompson, Smithers,
Newman, Wade & Childress, on brief),
for appellees.


By published opinion issued June 26, 2001, Skelly v.

Hertz Equipment Rental Corp. & Reliance Nat'l Indem. Co., 35 Va.

App. 689, 547 S.E.2d 551 (2001), a divided panel of this Court

affirmed the judgment of the Virginia Workers' Compensation

Commission.  We stayed the mandate of that decision and granted

rehearing en banc.

Upon rehearing en banc, the stay of this Court's June

26, 2001 mandate is lifted and we affirm the judgment of the

Workers' Compensation Commission for the reasons set forth in the majority panel decision.

_____

Elder, J., with whom Fitzpatrick, C.J., Benton, Annunziata and Frank, JJ., join, dissenting.

I would hold this case is controlled by rather than distinguishable from Wood v. Caudle-Hyatt, Inc., 18 Va. App. 391, 444 S.E.2d 3 (1994). Here, the claimants notified Hertz of the proposed settlement and the date on which they hoped to obtain court approval. The settlement did not impair Hertz's rights until a valid release was executed, which could not have occurred until the claimants obtained court approval for the settlement. Hertz had over four weeks before the court approved the settlement in which to act, but it failed to voice any objections during that time. Therefore, I respectfully dissent.

Wood involved a claimant with asbestosis who filed a claim for workers' compensation benefits against his employer, Caudle-Hyatt, Inc. Id. at 393, 444 S.E.2d at 5. Wood simultaneously pursued common law tort actions against various asbestos manufacturers and negotiated settlement offers for the tort claims. Id. Wood notified Caudle-Hyatt in writing by certified mail of the terms of the settlement offers and said he intended to accept them unless Caudle-Hyatt objected within ten days. Id. Caudle-Hyatt responded that it was not liable for Wood's asbestosis claim; it did not agree or object to the

proposed tort settlement or mention any subrogation rights.  Id. at 393-94, 444 S.E.2d at 5.  Wood then settled the tort claims for an amount that exceeded the sum he might have received for his ailment under the Workers' Compensation Act, exclusive of medical expenses.  Id. at 394, 444 S.E.2d at 5.

On appeal, we held, inter alia, that Wood's claim for compensation and a pro rata share of attorney's fees from Caudle-Hyatt was not barred because Wood informed Caudle-Hyatt of the terms of the settlement and gave it an opportunity to object or to participate in order to protect its subrogation rights.  Id. at 398-99, 444 S.E.2d at 7-8.  In essence, we held that Caudle-Hyatt consented to the settlement through its inaction.

Similarly, here, Hertz consented through inaction to the settlement of the third-party wrongful death claim on behalf of the claimants.  Under general principles of insurance law, an insurer's subrogation rights are not impaired by a settlement until a valid release has been executed by one with authority to do so.  See 16 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 224:100 (1999); id. § 224:104 ("As with any contract provision, there must be a meeting of the minds concerning the terms and conditions of the applicable provision as well as meeting all other requirements of an enforceable contract (i.e., authority and consideration).").  Virginia's

-3-

wrongful death statutes provide that a decedent's personal representative may compromise a wrongful death claim only with court approval.  See Code § 8.01-55.  Here, it is undisputed that the claimants' attorney kept Hertz's attorneys apprised of the settlement negotiations in the wrongful death suit as they progressed.  Although the commission found that the claimants' counsel verbally accepted a settlement offer of $725,000 on April 22, 1997, without first obtaining Hertz's approval for that exact figure, claimants' counsel informed Hertz's attorneys of the verbal acceptance that same day.  The hearing required under Code § 8.01-55 for formal approval of that settlement did not occur until at least May 21, 1997, more than four weeks later.  The claimants could not execute a valid release until after they obtained judicial approval and, thus, their actions could not have impaired Hertz's subrogation rights prior to that time.

During the four-week period preceding judicial approval of the settlement, claimants' counsel provided Hertz's counsel with a copy of the letter confirming settlement of the third-party claim.  Claimants' counsel also wrote a separate letter, dated May 9, 1997, directly to Hertz's counsel.  That letter notified Hertz of the May 21, 1997 hearing at which the claimants intended to seek approval of the third-party settlement.  The letter also indicated the claimants' intent

-4-

thereafter to "turn [their] attention to the subrogation interest of Hertz," indicating clearly that they did not intend to abandon their claim for workers' compensation benefits. Despite this notice, Hertz did not appear at the May 21, 1997 hearing and did not object to the settlement prior to the court's entry of an order approving the settlement on May 27, 1997. Although Hertz lacked standing to oppose the court's entry of an order approving the third-party settlement, the claimants' or personal representative's consent remained a prerequisite to judicial approval of the settlement. If Hertz had communicated its objections to the claimants prior to the hearing, entry of the court's order of approval, or the claimants' execution of a release, the claimants could have withdrawn their consent.

Thus, I would hold that here, as in Wood, Hertz consented to the settlement by its inaction, and I would reverse and remand to the commission for further proceedings consistent with this approach, including the mandate that the commission address the issue raised by Hertz regarding apportionment of attorneys' fees and costs incurred by Hertz in protecting its interests in the third-party action. Therefore, I dissent.

_____

This order shall be published and certified to the Virginia Workers' Compensation Commission.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

Tuesday        7th

August, 2001.


Shannon P. Skelly and Sarah E. Skelly,
 as Beneficiaries of Michael L. Skelly, Deceased,
         Appellants,


 against       Record No. 2358-00-2
               Claim No. 182-60-40

Hertz Equipment Rental Corporation and
 Reliance National Indemnity Company,                    Appellees.


Upon a Petition for Rehearing En Banc

Before Chief Judge Fitzpatrick, Judges Benton, Willis, Elder,
Bray, Annunziata, Bumgardner, Frank, Humphreys, Clements and
Agee


        On July 10, 2001 came the appellants, by counsel, and filed a petition praying that the Court set aside the judgment rendered herein on June 26, 2001, and grant a rehearing en banc thereof.

        On consideration whereof, the petition for rehearing en banc is granted, the mandate entered herein on June 26, 2001 is stayed pending the decision of the Court en banc, and the appeal is reinstated on the docket of this Court.

        The parties shall file briefs in compliance with Rule 5A:35. The appellants shall attach as an addendum to the opening brief upon rehearing en banc a copy of the opinion previously

-7-

rendered by the Court in this matter. It is further ordered that the appellants shall file with the clerk of this Court twelve additional copies of the appendix previously filed in this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Elder and Bray
Argued at Richmond, Virginia


SHANNON P. SKELLY AND SARAH E. SKELLY,
 AS BENEFICIARIES OF MICHAEL L.
 SKELLY, DECEASED
                                        OPINION BY
v.    Record No. 2358-00-2      JUDGE JERE M. H. WILLIS, JR.
                                      JUNE 26, 2001
HERTZ EQUIPMENT RENTAL CORPORATION
 AND RELIANCE NATIONAL INDEMNITY COMPANY


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Louis D. Snesil (Louis D. Snesil, P.C., on
            brief), for appellants.

            R. Ferrell Newman (Thompson, Smithers,
            Newman, Wade & Childress, on brief), for
            appellees.


    The statutory beneficiaries of Michael L. Skelly

(claimants) appeal a decision of the Workers' Compensation

Commission holding that Hertz Equipment Rental Corporation and

its insurance carrier (together Hertz) were not responsible for

the payment of attorney's fees and costs related to the

settlement of a third-party tort claim.  The claimants contend

that the commission erred in finding (1) that they settled a

third-party tort claim without Hertz's consent or knowledge, and

(2) that the settlement prejudiced Hertz's right of subrogation

against the third-party tort-feasor.  Finding no error, we

affirm the commission's decision.

## I.  BACKGROUND

On appeal, we view the evidence in the light most favorable to the party prevailing below.  See R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).  The commission's factual findings will be upheld on appeal if supported by credible evidence.  See James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989).

On October 7, 1996, Michael Skelly was killed in an automobile accident that arose out of and in the course of his employment by Hertz.  John Shea, an attorney with the law firm of Marks and Harrison, was employed by the claimants to assert a wrongful death claim and a workers' compensation claim.  There were three potential claimants, the deceased's wife, Shannon Skelly, and two infants, Sarah Skelly and Taunnie Skelly.  Hertz employed the law firm of Sands, Anderson, Marks and Miller to represent its interests.  Cecil Creasey and Michael DeCamps of that firm represented Hertz.  Had the claimants sought it, an award of $248,000 (500 weeks at $496 per week) plus funeral expenses could have been entered in their favor under the Workers' Compensation Act.  However, no award was entered.  Hertz paid no compensation.  The claimants proceeded directly with their third-party wrongful death claim.

Skelly's estate filed a wrongful death suit against the driver of the other vehicle, Charles Franklin, and his employer, Metzler Brothers, Inc.  In preparing for trial, the estate hired

investigators, engaged in written discovery, motions and hearings, hired experts, and conducted depositions.  Trial was set for April 29, 1997, but on April 22, 1997, the claimants accepted a settlement in the amount of $725,000.  Thereafter, they sought from Hertz reimbursement of pro rata attorney's fees and costs incurred in the third-party litigation, pursuant to Code § 65.2-311.

In October and November, 1996, Mr. Shea and Mr. Creasey had several telephone conversations and corresponded by letter regarding how to proceed with the third-party tort claim and the workers' compensation claim.

On October 17, 1996, Mr. Creasey wrote:

> [Hertz], as you know, pursuant to 65.2-309, et seq., holds an assignment of any right to recover damages against the third parties responsible for the death of Mr. Skelly.  Of course, [Hertz] may pursue such right in its own name or that of the personal representative.  [Hertz] fully intends to pursue its statutory interests against the third parties and is presently weighing the options on methodology.

On October 22, 1996, Mr. Creasey wrote Mr. Shea to advise him that Hertz was weighing alternatives and asked for any "thoughts on that issue."  Mr. Shea and Mr. Creasey spoke on the telephone on October 24, 1996, and Mr. Creasey followed up that conversation with a letter, which stated in pertinent part:

> [Hertz] has elected to exercise its right to pursue its own interest against the defendants, but we are willing to work with you toward a mutually agreeable recovery.  I understand that you have filed suit against

- 11 -

the defendants in the U.S. District Court for the Eastern District of Virginia. Thank you for sending me a courtesy copy of your complaint. . . .

[Hertz's] exposure in this matter is in excess of a quarter of a million dollars ($496 x 500 weeks = $248,000 plus cost of living, funeral, and other expenses). Consequently, [Hertz] does intend to pursue the assigned right to recover and would receive first dollar from such recovery. I only assume you expect there is a case to be made for recovery in excess of [Hertz's] exposure, and your representation is particularly for that purpose. As we discussed, there may be some problems that develop, but I believe we should be able to work them out satisfactorily toward our common goal. . . .

Regardless, [Hertz] would like to cooperate with you in this matter. Toward this end, [Hertz] does not want to be blindsided at some point down the road with respect to distribution of recovery and/or attorneys fees. It is not [Hertz's] desire to interfere with your representation of Mrs. Skelly and the minor child(ren). . . . [Hertz] is glad to share the litigation expenses. . . . In assisting us to evaluate how best to effect [Hertz's] interests, including whether to file a separate suit, please let me know how you view the relative rights in this matter, particularly with respect to the distribution of any recovery ultimately obtained from the defendants.

Mr. Shea testified that he read the October 17 and October 24 letters "together to lead [him] to believe that [Mr. Creasey] did not countenance or agree with the personal representative's right to pursue the action which had already been filed and that's when [he] last wrote [Mr. Creasey] . . . and said, well, apparently good lawyers can have differences of opinion." According to Mr. Shea, Mr. Creasey's position

- 12 -

regarding the wrongful death case was that Hertz had an

assignment of any right to recover damages against the

third-party and Hertz would "have the right to be reimbursed for

the first dollar recovered."

On November 4, 1996, Mr. Shea wrote a letter stating:

> We have filed and will pursue to a full recovery the cause of action against Franklin and Metzler Brothers. Under these circumstances, the filing of any separate action or claim by [Hertz] . . . against Franklin and Metzler Brothers would be unauthorized and wholly unnecessary. Moreover, there is no need for [Hertz] or your firm to incur any expenses or attorney's fees in connection with the action and recovery against Franklin and Metzler Brothers.
>
> Although we appreciate your offer to share in the litigation expenses, the plaintiff and our firm will bear all litigation expenses necessary to pursue the action. Our firm will provide all attorney and related services necessary to recover this cause of action. Your client's subrogation rights are fully protected by statute. There is no need for your firm to provide any services or expenses of any kind in connection with the cause of action against Franklin and Metzler Brothers. . . .
>
> Although I will keep you informed regarding the progress of our action, we do not require a "shared endeavor" in the sense that you seem to mean. The Plaintiff and our firm will provide the expenses and attorney services necessary to pursue the plaintiff's cause of action to a full recovery, and will claim the right to be reimbursed by the employer (by deduction from the amount of the employer's subrogation rights) for the full proportionate share of the Plaintiff's expenses and attorney's fees.

Mr. Shea stated that any attorney fees or expenses incurred by Hertz would be wholly superfluous, duplicative, and unnecessary to the pursuit of the action and recovery, were not requested or authorized by his client, and would not alter the statutory distribution of the recovery.

On November 5, 1996, Mr. Creasey responded by letter, reminding Mr. Shea "that [he is] not authorized to negotiate or settle the claim against third parties." Mr. Creasey expressed his concern that Hertz's rights would be prejudiced if it were not allowed to participate in the suit.

Mr. Shea testified that, for litigation strategy purposes, he was concerned about letting the jury know that Hertz was involved in the case. He did not, however, object to Hertz intervening by a petition or motion to intervene, informing the court of its interests under the Workers' Compensation Act. He stated that he "didn't want . . . [Hertz] to go find another courthouse and file another lawsuit." He testified further that he told Mr. Creasey on November 8, 1996, to take whatever steps he thought necessary, and he promised to protect Hertz's subrogation rights in the wrongful death settlement.

In light of the position taken by Mr. Shea, Hertz continued to employ Mr. Creasey's law firm to protect its subrogation interest. Due to the strained relationship that developed between Mr. Shea and Mr. Creasey, Michael DeCamps of Sands,

Anderson, Marks and Miller assumed responsibility for the matter on behalf of Hertz.

On April 10, 1997, Mr. Shea received a settlement offer of $200,000 from the third-party tort-feasor. He replied on April 13, 1997, demanding $1,375,000. Mr. Shea testified that he tried to keep Mr. DeCamps informed of the settlement negotiations. On April 14, 1997, he wrote Mr. DeCamps, stating:

> Obviously, time is going to be of the
> essence. Therefore, I am trying to keep you
> and Hertz advised as carefully as I can of
> the settlement negotiations. Although it is
> not clear to me under the law whether or not
> I need Hertz's permission to settle a
> wrongful death action when no benefits have
> been paid, I certainly anticipate seeking
> that permission and hope you will keep Hertz
> advised so that a quick decision can be made
> in the event that a favorable offer is
> extended.

An April 22, 1997 letter from Mr. Shea to Taunnie Skelly's attorney stated that his client would instruct him to accept an offer of $700,000. In this letter, Mr. Shea noted that he understood from Mr. DeCamps that "Hertz's only reservation about agreeing to this settlement was the uncertainty that surrounds their subrogation interest as it relates to Taunnie." That same day, April 22, 1997, Mr. Shea accepted the third-party tort-feasor's offer of $725,000. A copy of Mr. Shea's letter accepting settlement was sent to Mr. DeCamps.

According to Mr. Shea, Mr. DeCamps was satisfied with any settlement because negotiations had gone beyond the $250,000

lien of Hertz. However, Mr. Shea did not seek Mr. DeCamps'
permission to settle the third-party claim. Mr. Shea testified:

> We [Mr. Shea and Mr. DeCamps] talked in
> terms of where we were and if Hertz had any
> questions about it, and as I've indicated,
> [he] was like, well, I mean, you're so far
> beyond two fifty, I don't know what
> reservation they could have, but if there's
> any, you know, anything comes up, I will let
> you know, and he never got back to me. . . .
> And then [the third-party tort-feasor] went
> to seven twenty-five and having told them
> that I was right around seven hundred and I
> called my client back and she said, please
> take it, and I took it.

On May 9, 1997, Mr. Shea wrote Mr. Creasey, confirming that
other counsel was now representing Shannon and Sarah Skelly
individually. This letter also reminded Mr. Creasey about an
upcoming hearing "regarding the status of Taunnie L. Skelly as a
statutory beneficiary in the wrongful death case." The letter
further stated that it was his hope that they would "be able to
seek Court approval of the wrongful death action at that time,
and that [they could] then turn [their] attention to the
subrogation interest of [Hertz]."

At the settlement hearing, the judge approved the
settlement and asked for briefs on the only issue left to be
settled, whether Taunnie Skelly should share in the
distribution. An agreement was reached on that issue and a
December 23, 1997 order distributed the settlement money.

Mr. Creasey testified that he and Mr. Shea disagreed about
"the extent of Hertz's rights with respect to the assignment of

- 16 -

the right to recover against a third party." According to Mr. Creasey, he "specifically asked [Mr. Shea if] . . . he [was] in the position or was he willing to assume the representation of [Hertz] at the time against the third parties and his response was an unequivocal no."

Mr. DeCamps testified that he attended depositions, participated in consultation with expert witnesses and offered some suggestions regarding their direction, reviewed correspondence and pleadings, offered suggestions about the direction of the case, and provided an "in" for Mr. Shea to get information from Hertz. He acknowledged that Mr. Shea apprised him of the ongoing negotiations and that he and Mr. Shea had two conversations on April 22, 1997. He testified that, during those conversations, Mr. Shea asked him to "get in touch with Hertz to see if they would be on watch so to speak for whatever number they ultimately arrived at so that they could bless it or not bless it." He testified that he tried to contact Hertz but no one with settlement authority was available that day. Therefore, he stated that he and Mr. Creasey called Mr. Shea to tell him that Hertz could not approve a settlement that day and that Mr. Shea told them at that time that an offer of $725,000 had been made and accepted. Mr. DeCamps denied that he told Mr. Shea that he would tell him if Hertz objected to the settlement.

The deputy commissioner held that Hertz had not consented to the third-party settlement, that the parties had no agreement

regarding attorney's fees, that "the claimants had 'one full recovery' and were not entitled to any additional benefits under the Workers' Compensation Act, and, further, that the settlement of the third-party claim without the consent of [Hertz], prejudiced [Hertz], and as a result thereof, the claimant is barred from benefits."  The full commission affirmed.  The record supports those findings.

## II.  HERTZ'S SUBROGATION RIGHT

An employee injured in the course of employment by a negligent third party may pursue a common law remedy against the tort-feasor and a claim for compensation benefits under the Workers' Compensation Act, but may obtain only one full recovery for the injury.  Noblin v. Randolph Corp., 180 Va. 345, 358-59, 23 S.E.2d 209, 214 (1942).

> If the employee pursues both remedies, at such time that the employee makes a claim for workers' compensation benefits, the "claim . . . shall operate as an assignment to the employer of any right to recover damages," and the employer "shall be subrogated to [the right to recover damages] in his own name or in the name of the injured employee."

Wood v. Caudle-Hyatt, Inc., 18 Va. App. 391, 395-96, 444 S.E.2d 3, 6 (1994) (quoting Code § 65.2-309(A)).  "[T]he employee may not pursue his common law remedy in such a manner or settle his claim to the prejudice of the employer's subrogation right and thereafter continue to receive workers' compensation benefits."  Id. at 397, 444 S.E.2d at 7 (citations omitted).

- 18 -

> The employee necessarily prejudices his employer's subrogation rights and, thus, is barred from obtaining or continuing to receive benefits under a workers' compensation award when an employee settles a third-party tort claim without notice, or without making a claim for workers' compensation benefits, or without obtaining the consent of the employer.

Id. (citation omitted).

In Wood, the employee promptly, by certified mail, notified the employer of the terms of the proposed third-party settlement, which was in excess of his potential workers' compensation benefits, and requested the employer's consent or objection within ten days. Id. at 398, 444 S.E.2d at 7. We held that the employer was thus afforded an opportunity to object and to protect its subrogation rights, and was not prejudiced by the settlement. See id.

Here, Hertz was neither told of, nor given the opportunity to object to, the settlement offer prior to its acceptance by the claimants. Unlike the situation in Wood, the claimants' unauthorized settlement of their third-party claim prejudiced Hertz by depriving it of the opportunity to protect and assert its subrogation rights against the third-party tort-feasor. See Safety-Kleen Corp. v. Van Hoy, 225 Va. 64, 69, 300 S.E.2d 750, 753 (1983); Green v. Warwick Plumbing & Heating Corp., 5 Va. App. 409, 412, 364 S.E.2d 4, 6 (1988).

Relying on Wood, the dissent asserts that "Hertz consented through inaction to the settlement of the third-party wrongful

death claim . . . ." That was the situation in <u>Wood</u>. In that case, the employer was informed in advance of the settlement to be made and was told that unless it objected, the settlement would be undertaken. The situation in this case is just the opposite. While Hertz was told that settlement negotiations were in progress, it was not informed of the settlement until the settlement agreement had been made. Thus, unlike the situation in <u>Wood</u>, Hertz was never given the opportunity to forestall the settlement. The settlement was presented to it initially as a <u>fait</u> <u>accompli</u> which, subject to court approval, was binding.

The dissent further contends that Hertz had a full opportunity to oppose the settlement at the approval hearing before the trial court. This contention overlooks the purpose and character of that hearing. Because a wrongful death action is brought by a personal representative on behalf of statutory beneficiaries, court approval is required to ensure that the rights and interests of those beneficiaries are protected. Hertz was not a party whose interests were subject to protection by the trial court. It was not represented by the personal representative. Indeed, the personal representative's counsel expressly refused to represent Hertz. Hertz was left to pursue its own rights as an independent party. Its exclusion from settlement negotiations forestalled its ability <u>pro</u> <u>tanto</u> to

- 20 -

enforce its rights.  The approval hearing before the trial court could in no way reverse that exclusion.

The claimants argue that Safety-Kleen and Green do not control decision in this case.  They argue that because the third-party settlement exceeded Hertz's maximum potential liability, the settlement effectively insulated Hertz from any liability under the Act and, thus, effected no prejudice.  The commission addressed this contention.  The commission, citing Stone v. George W. Helme Co., 184 Va. 1051, 1059-60, 37 S.E.2d 70, 73-74, (1946), held that the extinguishment of the third-party claim prejudiced per se Hertz's right of subrogation.  It further held that variation in the amount of the third-party settlement would affect Hertz's potential fractional liability for fees and costs, and that Hertz, therefore, had an interest in the amount of the third-party settlement and the right to participate in its determination. The commission concluded:

> [Mr. Shea], by his decision, did not represent [Hertz's] interests in the third-party claim.  The claimants did not advise [Hertz] of the settlement offer nor obtain its consent.  These actions impaired [Hertz's] right of subrogation and foreclosed the possibility that [Hertz] could lessen its obligation by negotiating a higher settlement.  The claimants' right to compensation, in this case the reimbursement of attorney's fees and costs, is barred.

We approve that rationale.

The claimants never pursued their rights under the Workers' Compensation Act.  They proceeded directly with their third-party wrongful death suit, excluding Hertz from participation in that suit or in its settlement.  They sought and received no intervening benefits under the Workers' Compensation Act.  Thus, they rejected their rights under the Act and proceeded directly and independently to a full recovery at law.

The judgment of the commission is affirmed.

Affirmed.

Elder, J., dissenting.

I would hold this case is controlled by rather than distinguishable from Wood v. Caudle-Hyatt, Inc., 18 Va. App. 391, 444 S.E.2d 3 (1994). Here, the claimants notified Hertz of the proposed settlement and the date on which they hoped to obtain court approval. Hertz had over four weeks in which to act but failed to voice any objections during that time. Therefore, I respectfully dissent.

Wood involved a claimant with asbestosis who filed a claim for workers' compensation benefits against his employer, Caudle-Hyatt, Inc. Id. at 393, 444 S.E.2d at 5. Wood simultaneously pursued common law tort actions against various asbestos manufacturers and negotiated settlement offers for the tort claims. Id. Wood notified Caudle-Hyatt in writing by certified mail of the terms of the settlement offers and said he intended to accept them unless Caudle-Hyatt objected within ten days. Id. Caudle-Hyatt responded that it was not liable for Wood's asbestosis claim; it did not agree or object to the proposed tort settlement or mention any subrogation rights. Id. at 393-94, 444 S.E.2d at 5. Wood then settled the tort claims for an amount that exceeded the sum he might have received for his ailment under the Workers' Compensation Act, exclusive of medical expenses. Id. at 394, 444 S.E.2d at 5.

On appeal, we held, inter alia, that Wood's claim for compensation and a pro rata share of attorney's fees from

- 23 -

Caudle-Hyatt was not barred because Wood informed Caudle-Hyatt of the terms of the settlement and gave it an opportunity to object or to participate in order to protect its subrogation rights.  Id. at 398-99, 444 S.E.2d at 7-8.  In essence, we held that Caudle-Hyatt consented to the settlement through its inaction.

Similarly, here, Hertz consented through inaction to the settlement of the third-party wrongful death claim on behalf of the claimants.  Virginia's wrongful death statutes provide that a decedent's personal representative may compromise a wrongful death claim only with court approval.  See Code § 8.01-55.  It is undisputed that the claimants' attorney kept Hertz's attorneys apprised of the settlement negotiations in the wrongful death suit as they progressed.  Although the commission found that the claimants' counsel verbally accepted a settlement offer of $725,000 on April 22, 1997, without first obtaining Hertz's approval for that exact figure, claimants' counsel informed Hertz's attorneys of the verbal acceptance that same day.  The hearing required under Code § 8.01-55 for formal approval of that settlement did not occur until at least May 21, 1997, more than four weeks later.

During that four-week period, claimants' counsel provided Hertz's counsel with a copy of the letter confirming settlement of the third-party claim.  Claimants' counsel also wrote a separate letter, dated May 9, 1997, directly to Hertz's counsel.

- 24 -

That letter notified Hertz of the May 21, 1997 hearing at which the claimants intended to seek approval of the third-party settlement. The letter also indicated the claimants' intent thereafter to "turn [their] attention to the subrogation interest of Hertz," indicating clearly that they did not intend to abandon their claim for workers' compensation benefits. Despite this notice, Hertz did not appear at the May 21, 1997 hearing and did not object to the settlement prior to the court's entry of an order approving the settlement on May 27, 1997. Although Hertz lacked standing to oppose the court's entry of an order approving the third-party settlement, the claimants' or personal representative's consent remained a prerequisite to judicial approval of the settlement. If Hertz had communicated its objections to the claimants prior to the hearing or entry of the court's order of approval, the claimants could have withdrawn their consent.

Thus, I would hold that here, as in Wood, Hertz consented to the settlement by its inaction, and I would reverse and remand to the commission for further proceedings consistent with this approach, including the mandate that the commission address the issue raised by Hertz regarding apportionment of attorneys' fees and costs incurred by Hertz in protecting its interests in the third-party action. Therefore, I dissent.